# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONI DIOQUINO,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>　　　　　　　　Defendant. | Case No. 20-cv-00167-BAS-RBB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 22)** |

Plaintiff Joni Dioquino brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"). She seeks disability benefits under two employee benefit plans funded by Defendant United of Omaha Life Insurance Company. Now before the Court is Defendant's motion for partial summary judgment. (ECF No. 22.) Defendant argues part of Plaintiff's action is moot. And it believes the remainder is not properly before the Court because she did not exhaust her plan-based remedies. Plaintiff opposes. (ECF No. 25.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

# BACKGROUND

## I. Disability Insurance Plans

In 2013, Plaintiff started working for Children's Physicians Medical Group, Inc. (Joint Statement of Undisputed Facts ("JSUF") 6:2–5, ECF No. 27.) Plaintiff participated in two employee welfare benefit plans that her employer sponsored: a short-term disability benefits plan ("STD Plan") and a long-term disability benefits plan ("LTD Plan"). (*Id.* 1:7–12, 1:23–2:1.) Children's Medical served as the administrator for the plans, and Defendant issued the group insurance policies that funded the plans. (*Id.* 1:14–17; 2:3–5; 6:7–13; *see also* STD Policy, Campbell Decl. Ex. 1, ECF No. 22-4; LTD Policy, Campbell Decl. Ex. 3, ECF No. 22-6.) Plaintiff's lawsuit seeks benefits under both plans. (Complaint ¶¶ 57–65, ECF No. 1.)

### A. Short-Term Disability Plan

The STD Plan provides disability benefits for a maximum of eleven weeks. (STD Plan 2.) Although the plan provides benefits for both partial and total disability, this dispute centers on the benefits for total disability. (Compl. ¶¶ 7, 10.)

<u>Total Disability</u>. A plan participant like Plaintiff is "Totally Disabled" when she is "unable to perform, with reasonable continuity, the Substantial and Material Acts necessary to pursue [her] Usual Occupation" because of "an Injury or Sickness." (STD Plan 17.) "Substantial and Material Acts" are "the important tasks, functions and operations generally required from employers" in the employee's Usual Occupation "that cannot be reasonably omitted or modified." (*Id.*) And the employee's "Usual Occupation" is "any employment, business, trade or profession and the Substantial and Material Acts of the occupation [she was] regularly performing for the Policyholder when the Disability began." (*Id.* at 17–18.)

<u>Elimination Period</u>. An employee who becomes disabled is not immediately entitled to benefits. Rather, the employee must first satisfy the "Elimination Period," which is a minimum "period of continuous Total or Partial Disability." (STD Plan 16.) The STD Plan's Elimination Period is fourteen calendar days. (*Id.* at 2.) Therefore, an employee

can first start receiving benefits only after fourteen days of continuous disability. (*Id.* at 8.)

Benefits. Assuming an employee is disabled and satisfies the Elimination Period, the STD Plan provides a "Weekly Benefit" that is the lesser of: (a) 70% of the employee's weekly earnings, less "Other Income Benefits," or (b) "the maximum Weekly Benefit, which is $2,000, less Other Income Benefits." (STD Plan 2.) The "Other Income Benefits" that offset the Weekly Benefit include state government disability benefits. (*Id.* at 3.)

Claims Procedure. The STD Plan requires an employee to submit written proof of loss in order for a claim for benefits to be considered. (STD Plan 11.) An employee satisfies this requirement by submitting either a completed claim form or a written statement that includes the cause of the disability, treating physician contact information, and any restrictions and limitations preventing the employee from performing job duties. (*Id.*) Consistent with ERISA regulations, the STD Plan requires Defendant to evaluate the claim within a set period. (*Id.*) If Defendant denies the claim, it must provide notice of the denial, including "specific reason(s) for the denial" and a "reference to specific Policy provisions on which the denial is based." (*Id.* at 13.) The employee has a right to appeal the claim decision within 180 days, and Defendant must again respond to the appeal within a set period. (*Id.* at 14.)

**B.  Long-Term Disability Plan**

Whereas the STD Plan provides benefits for up to eleven weeks, the LTD Plan provides benefits for a participant like Plaintiff until potentially up to her Social Security retirement age. (*See* LTD Plan 3.) The LTD Plan similarly provides benefits for partial and total disability, but the focus here remains on its total disability benefits. (Compl. ¶¶ 8–10.)

Total Disability. The LTD Plan's "Total Disability" definition is two-phased. For the first two years, a Total Disability is materially the same as under the STD Plan. An employee is totally disabled when an illness prevents her from doing the Substantial and Material Acts necessary to pursue her Usual Occupation. (LTD Plan 21.) After two years

of benefits, the definition becomes more stringent. An employee is totally disabled only if she cannot perform any reasonable occupation in light of her "age, education, training, experience, station in life, and physical and mental capacity." (*Id.*)

Elimination Period. The LTD Plan likewise includes a waiting period before an employee is entitled to benefits. (LTD Plan 19.) The "Elimination Period" is the later of: (a) "90 calendar days," or (b) the date . . . short-term disability payments under the Policyholder's insured or self-insured group plan end." (*Id.* at 2.)

Benefits. Assuming an employee is totally disabled and satisfies the ninety-day Elimination Period, the LTD Plan provides for a monthly benefit that is the lesser of: (a) 60% of the employee's gross monthly pay, less Other Income Benefits; or (b) $6,000, less any Other Income Benefits. (LTD Plan 2.)

Claims Procedure. The LTD Plan has the same claims procedure as the STD Plan. (*Compare* LTD Plan 11–14, *with* STD Plan 14–17.) The employee must submit a written claim, Defendant must respond, and the employee has the right to appeal an adverse decision within 180 days. (LTD Plan 11–14.)

## II. Plaintiff's Request for Benefits

Claim. Plaintiff worked as a Financial Analyst/Accountant for Children's Medical. (STD Claim Form, United 428–30.[1]) On November 8, 2018, she completed Defendant's Short-Term Disability Claim Form. (United 665–68.) Plaintiff listed her disability as beginning on August 20, 2018, and wrote that she was "unable to sit for [a] period of time" and needed to elevate her legs. (*Id.* 665.) Plaintiff stated she was first treated for her illness

---

[1] The Court cites to the bate stamps on Plaintiff's claim file. The corresponding exhibits are included below. The two gaps in the bate stamps are the STD and LTD policies, which the Court cites to by their page numbers.

| United-000044 to United-000188 | Campbell Decl. ¶ 4, Ex. 2-1, ECF No. 34-1 |
| United-000189 to United-000438 | Campbell Decl. ¶ 4, Ex. 2-2, ECF No. 34-2 |
| United-000439 to United-000613 | Campbell Decl. ¶ 4, Ex. 2-3, ECF No. 34-3 |
| United-000614 to United-000788 | Campbell Decl. ¶ 4, Ex. 2-4, ECF No. 34-4 |
| United-000833 to United-001025 | Campbell Decl. ¶ 4, Ex. 4, ECF No. 34-5 |

on August 29, 2028, and identified Dr. Richard Campbell as her treating physician. (*Id.*) Children's Medical completed the employer's portion of the form, where it noted Plaintiff's job was sedentary and checked a box indicating that Defendant "cover[s] the Employee for group long-term disability." (*Id.* 666.)

Dr. Campbell completed the attending physician's portion of the disability form. (United 667–68.) According to Dr. Campbell, Plaintiff needs to elevate her legs frequently, and she is "unable to sit/stand/walk" for more than ten minutes per hour, as she needs to frequently get up from sitting for stretch breaks. (*Id.* 668.) Dr. Campbell also checked a box indicating Plaintiff is unable to work with modifications to her job. (*Id.*)

<u>Claim Decision</u>. Defendant's claims manager referred Plaintiff's claim for medical review by its Clinical Nurse Consultant. (United 670–72.) The nurse summarized Plaintiff's medical file, including Dr. Campbell's treatment notes from August 29, 2018, and November 8, 2018. (*Id.* 671–72.) In those notes, Dr. Campbell diagnosed Plaintiff with "Achilles tendinitis of left lower extremity (M76.62)," "Arthritis of knee (M17-10)," and "Left knee sprain (S83.92XA)." (*Id.* 449.) His diagnosis relied on an August 29, 2018, x-ray of Plaintiff's knee. (*Id.* 448.) The x-ray did not reveal that Plaintiff's knee was dislocated or fractured, but it did show there was mild arthrosis, joint effusion, and moderate-to-severe narrowing of the patellofemoral compartment. (*Id.*) Therefore, the x-ray led to an impression of bilateral knee arthrosis. (*Id.*) After reviewing Plaintiff's file, Defendant's nurse consultant wrote on January 8, 2019:

> While it would be reasonable to support restrictions and limitations of elevating the left leg frequently, being unable to sit/stand/walk greater than 10 minutes per hour, and the need to get up from sitting frequently for stretch breaks, for 2-3 days, without a higher level of evaluation or treatment[,] one would not expect ongoing restrictions and limitations beyond that time.

(*Id.* 672.)

Defendant later referred Plaintiff's claim for review by an outside occupational physician, Gregory Smith. (United 702–07.) In a report dated February 6, 2019, Dr. Smith agreed that Plaintiff met the criteria for "Achilles tendinitis and left knee arthritis with

effusion." (*Id.* 703.) However, he opined that "[f]or the period under review 8/15/18 and forward," Plaintiff's diagnosis "is only consistent with moderate functional limitations of the left lower extremity"; that is, only "use of [a] cane" and "some limitations on weightbearing and repeated use of the left leg." (*Id.* 703.) Consequently, Dr. Smith concluded Plaintiff can stand "occasionally, 30 minutes at a time, 3 hours [a] day" and can sit "constantly." (*Id.* 703–04.)

On March 7, 2019, Defendant denied Plaintiff's claim for STD benefits. (United 647–52.) After incorporating Plaintiff's medical records and Dr. Smith's report, Defendant reasoned Plaintiff's restrictions and limitations "do not preclude [her] from working" because she has "a sedentary occupation." (*Id.* 649.) Hence, Defendant determined no benefits are payable and advised Plaintiff of her right to appeal. (*Id.* 649–50.)

<u>Appeal</u>. On June 22, 2019, Plaintiff appealed the denial of her disability benefits. (JSUF 8:4–7.) She forwarded updated medical records, x-ray results, MRI results, a list of exercises for physical therapy, reference materials, and Dr. Campbell's visit summary dated January 3, 2019. (*Id.*) Defendant again referred Plaintiff's complete file for review by a different orthopedic consultant. (*Id.* 127.) That physician, Dr. Hulett, opined that the "clinical findings are limited despite multiple complaints." (*Id.* 249.) Dr. Hulett concluded those findings do not "clearly indicate functional impairment," with "no restrictions supported from 8/22/18–7/9/19." (*Id.* 249.)

On August 22, 2019, Plaintiff responded to Dr. Hulett's review and submitted additional documentation. (United 246–47.) Dr. Hulett reviewed the supplemental records the following week but concluded they did not alter her opinions. (*Id.* 199–200.)

On September 1, 2019, after considerable back-and-forth, and over a year after Plaintiff stopped working, Defendant denied Plaintiff's appeal. (United 125–32.) The appeal letter notes that Defendant considered Plaintiff's additional documentation, including supplemental state disability certifications from Dr. Campbell and test results. (*Id.* 126–27.) The letter then incorporates Dr. Hulett's opinions. (*Id.* 128.) The insurance company concludes:

> Based upon our review, the medical information contained in your file supports various diagnoses; however, these diagnoses do no[t] support [restrictions and limitations] that would preclude the performance of the substantial and material acts of your usual occupation, which is performed at a sedentary level. Therefore, the denial of the claim is upheld.

(*Id.* 129.) After exhausting her plan remedies for STD benefits, Plaintiff did not file a separate claim for LTD benefits with Defendant. (*See* JSUF 4:24–5:28.)

### III. Plaintiff's Action

On January 24, 2020, Plaintiff filed this action seeking both STD and LTD benefits. (ECF No. 1.) After Defendant answered, the parties participated in an early neutral evaluation conference on April 23, 2020. (ECF No. 14.) When the case did not settle, Defendant issued Plaintiff a check for $1,244.76 plus interest, which it calculated to be the maximum amount she is owed under the STD Plan. (JSUF 1:19–21; Hess Decl. ¶ 3, Ex. B, ECF No. 22-10.) Defendant claims it did so because "it makes no sense to continue to litigate a claim that is worth less than $1,300." (Hess Decl. ¶ 3, Ex. B.) The amount of STD benefits is lower than one might expect because, as mentioned above, the STD Plan provides that state government disability benefits offset the plan's benefits, and Plaintiff received those benefits from California. (*See id.*; *see also* STD Plan 2–3.) Defendant now moves for partial summary judgment, arguing Plaintiff's STD claim is moot. (Mot., ECF No. 22.) The company also argues her LTD claim is not properly before the Court because Plaintiff lacks standing and failed to exhaust her remedies under the LTD Plan. (*Id.*)

### LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See id.* 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a

material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

When resolving a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are [factfinder] functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## ANALYSIS

### I. Mootness of Short-Term Disability Claim

There is no dispute that ERISA governs the employee benefit plans at issue. ERISA § 502 allows a plan participant like Plaintiff to bring an action to recover benefits due to her under a plan, to enforce her rights under a plan, or to clarify her rights to future benefits under a plan. 29 U.S.C. § 1132(a)(1)(B). Defendant argues Plaintiff's claim for benefits under the STD Plan is moot because the insurer has since paid her the maximum amount of benefits. (Mot. 10:27–11:12.)

"A claim is moot if it has lost its character as a present, live controversy." *Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1172–73 (9th Cir. 2009). Hence, a claim "becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) (emphasis omitted).

Plaintiff's claim for STD benefits is moot. The payment she received from Defendant is all the relief she "could receive on the claim through further litigation." *See Chen*, 819 F.3d at 1144.

Plaintiff still opposes Defendant's motion because she argues ERISA entitles her to recover her reasonable attorney's fees and costs. (Opp'n 6:8–7:9, ECF No. 25.) *See Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 244–45 (2010) (providing that where ERISA's fee-shifting provision applies, the court may award fees and costs to either party so long as

the claimant shows "some degree of success on the merits").  Even so, Plaintiff's underlying claim is moot.  The Court can resolve any request for attorney's fees and costs at the end of this case.  *See Tom v. Hartford Life & Accident Ins. Co.*, No. C 16-01067 WHA, 2017 WL 6209306, at *1 (N.D. Cal. Dec. 8, 2017) (resolving a plaintiff's motion for attorney's fees and costs under ERISA where the court had dismissed the action as moot after the defendant provided the requested benefits).  Therefore, the Court grants Defendant's request for summary judgment on Plaintiff's request for STD benefits.

## II.   Propriety of Long-Term Disability Claim

Although Plaintiff has received her STD benefits, she is also seeking LTD benefits under the LTD Plan.  Defendant argues summary adjudication of this claim is appropriate on justiciability and exhaustion grounds.

### A.   Standing

Defendant briefly argues Plaintiff lacks standing to seek LTD benefits because she did not file a claim for LTD benefits with Defendant.  (Mot. 11:14–12:12.)  "There is no ERISA exception to Article III."  *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1622 (2020).  That said, an "ordinary Article III standing analysis" shows Plaintiff can bring her ERISA § 502 claim.  *See id.*  Plaintiff has a concrete stake in this dispute because she claims entitlement to monetary benefits from Defendant under the LTD Plan, which she has not received.  *Cf. id.* (holding plaintiffs lacked standing where winning or losing the lawsuit would not change their pension benefits under the plan).  And as fully explored below, she asserts Defendant's treatment of her claim for STD benefits doomed any request for LTD benefits from Defendant.  In addition, the Court can award relief that remedies Plaintiff's asserted injury.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining the standing requirements).

Moreover, the ERISA case Defendant cites for this argument is distinguishable.  There, the court determined the plaintiffs lacked standing because they sought healthcare plan benefits based on medical services that had not yet been rendered.  *Delgado v. ILWU-PMA Welfare Plan*, No. 2:18-CV-5539 CBM, 2018 WL 8014336, at *3 (C.D. Cal. Nov.

20, 2018). Here, in contrast, Plaintiff claims she already meets the plan's definition of disability and is entitled to LTD benefits. The Court is therefore unpersuaded by Defendant's standing argument.

### B. Exhaustion of Plan Remedies

The heart of Defendant's motion relies on the judicially created exhaustion requirement for this type of claim. Defendant argues the Court should not entertain Plaintiff's cause of action because her failure to file a separate claim for LTD benefits means she did not exhaust her remedies under the LTD Plan. (Mot. 12:13–25:19.) Plaintiff responds that she was excused from doing so because exhaustion would have been futile. (Opp'n 7:10–19:8.) Defendant both anticipates this argument and counters that Plaintiff fails to meet her burden of demonstrating futility. (Mot. 17:12–25:19; Reply 3:22–10:21, ECF No. 26.) The Court will review the exhaustion requirement and then resolve the parties' well-briefed futility contentions.

#### 1. Exhaustion Rule

"Quite early in ERISA's history," the Ninth Circuit "announced as the general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1483 (9th Cir. 1995) (citing *Amato v. Bernard*, 618 F.2d 559, 566–68 (9th Cir.1980)). This requirement is not "explicitly set out in the statute," but "the exhaustion doctrine is consistent with ERISA's background, structure and legislative history." *Id.* The doctrine also "serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." *Id.* Therefore, "courts have the authority to enforce the exhaustion requirement in suits under ERISA, and . . . as a matter of sound policy they should usually do so." *Amato*, 618 F.2d at 568.

Because this requirement is prudential—and not jurisdictional—there are exceptions to the rule. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626–27 (9th

Cir. 2008). The exception relevant here is "when resort to the administrative route is futile." *Id.* (quoting *Amato*, 618 F.2d at 568).

### 2. Futility Exception

"The futility exception is 'designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail.'" *A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 909 (D. Or. 2016) (quoting *Diaz*, 50 F.3d at 1485 (9th Cir.1995)). Consequently, "bare assertions of futility are insufficient to bring a claim within the futility exception." *See Diaz*, 50 F.3d at 1485. And a plan's "refusal to pay" does not, by itself, show futility. *See id.*

For instance, in *Diaz*, the plan denied the participant's claim for medical expenses for his daughter who succumbed to leukemia based on the plan's pre-existing condition limitation. 50 F.3d at 1482. The plan provided for a right to appeal, but the participant did not do so before he and his spouse sued. *Id.* The district court granted the defendants' motions for summary judgment on exhaustion grounds. *Id.* The Ninth Circuit affirmed. *Id.* at 1486. It reasoned the district court did not abuse its discretion because the plaintiffs put forth only a bare assertion that exhaustion would be futile: the argument "that it would have been 'futile' for them to demand administrative review because both defendants have demonstrated by their continued refusal to pay that they have no intention of doing so." *Id.* at 1485–86. Further, the record contained "nothing but speculation to suggest that the administrators would have reached a preconceived result" when examining the merits. *Id.* at 1486.

In comparison, in *Burnett v. Raytheon Co. Short Term Disability Basic Benefits Plan*, 784 F. Supp. 2d 1170 (C.D. Cal. 2011), the district court excused exhaustion of an LTD claim under the futility exception. There, the same insurance company—MetLife— served as the claims administrator for the employer's self-funded STD and LTD benefit plans. *Id.* at 1174–75. MetLife initially granted the plaintiff's claim for STD benefits based on major depressive disorder, but later terminated his benefits. *Id.* at 1176–77. The plaintiff appealed the determination, and MetLife referred his claim for review by a board-

certified psychiatrist. *Id.* at 1177. Ultimately, like here, MetLife reaffirmed its denial of the claim while reasoning the clinical data did not support that the plaintiff was totally disabled and unable to perform his normal occupation. *Id.* at 1179. Further, again like here, the plaintiff never submitted an LTD claim before filing suit. *Id.* at 1181.

After a bench trial, the district court found the plaintiff's exhaustion of plan remedies would have been futile for several reasons:

> First, the definitions for "fully disabled" for purposes of STD benefits and LTD benefits are substantially the same. Second, the STD and LTD plans are integrated, such that they rely on and refer to each other. MetLife's termination of Burnett's STD Plan benefits essentially doomed any claim he might have to LTD Plan benefits. Finally, because MetLife is the designated Claim Administrator under both the STD and LTD plans, the plans are administered by the same entity. In light of the foregoing—considered together with MetLife's unwavering denial of Burnett's . . . STD benefits—MetLife likely would have denied any LTD benefits claim Burnett submitted for the same reasons it terminated his STD benefits claim.

*Burnett*, 784 F. Supp. 2d at 1185. The court also considered the policies underlying the exhaustion doctrine and reasoned they do not preclude application of the futility exception. *Id.*

As indicated, there is no genuine dispute that Plaintiff failed to comply with the LTD Plan's internal procedures. (*See* JSUF 4:24–5:28.) There is, however, a genuine issue of material fact as to whether exhaustion would have been futile. Viewing the evidence in the light most favorable to Plaintiff—as the Court must on summary judgment—a reasonable factfinder could conclude her LTD claim was doomed to fail.

In seeking to preempt Plaintiff's futility argument, Defendant submits a declaration from one of its employees who is a Group Claims Team Leader. (Campbell Decl., ECF No. 22-3.) The employee states he is aware of "other claims where [Defendant] initially found that the claimant was not entitled to STD benefits," but later favorably resolved a claim for LTD benefits when "additional and later information was submitted in support of the claimant's LTD claim." (*Id.* ¶ 8.) Defendant contends this declaration is the only

evidence before the Court concerning futility. (Reply 5:16–20, n.4.) And because it is unchallenged, Defendant argues it defeats Plaintiff's futility claim. (*Id.*)

The Court is unconvinced. Plaintiff points to several items a factfinder could consider for the futility inquiry. The Court starts with what is obvious: Defendant is the one resolving claims under both plans. A factfinder could rely on the fact that the same entity is the arbiter of claims under both plans in determining whether exhaustion would have been futile. *See, e.g.*, *Burnett*, 784 F. Supp. 2d at 1185 (relying on the fact that the employer's two plans were administered by the same entity).

Moreover, the terms of the benefit plans inform the futility determination. The STD Plan's definition of Total Disability is materially the same as under the LTD Plan for the first two years of LTD benefits. *See supra* Part I.A–B. Yet the LTD Plan requires a longer Elimination Period—a period of continuous disability—than the STD Plan. Whereas a participant must be fully disabled for fourteen days under the STD Plan to obtain benefits, the LTD Plan requires at least ninety days of total disability. *See supra* Part I.A–B. As Plaintiff argues, a factfinder could infer from these terms that if the claims administrator determined she did not satisfy the STD Plan's total disability definition for the Elimination Period, then the LTD Plan's claims administrator would almost certainly conclude she did not satisfy the same definition for an even longer period of continuous disability for LTD benefits. (*See* Opp'n 16:4–13.) Other courts have reached the same conclusion.[2]

Finally, the way Defendant resolved Plaintiff's STD claim is relevant for the futility inquiry. For example, if Defendant had denied her STD claim because she failed to fill out a form or submit any information from her doctor, it would be unreasonable for a factfinder to infer that filing an LTD claim would have been futile. Here, however, Defendant denied

---

[2] *See Burnett*, 784 F. Supp. 2d at 1185 (noting "the definitions for 'fully disabled' for purposes of STD benefits and LTD benefits are substantially the same"); *see also Darensbourg-Tillman v. Robins, Kaplan, Miller & Ciresi LLP Short Term Disability Plan*, No. CV 04-2903 AHM (VBKx), 2004 WL 5603225, at *3 (C.D. Cal. Sept. 3, 2004) ("Given these definitions, it is highly probable that the undisputed denial of Plaintiff's claim for benefits under the STD plan means that any claim under the LTD plan, which contains a more restrictive definition of disabled, would also be denied."); *Young v. UnumProvident Corp.*, No. CIV.01-2420 DWF/AJB, 2002 WL 2027285, at *1 (D. Minn. Sept. 3, 2002).

Plaintiff's claim on the merits for reasons that apply equally to a claim under the LTD Plan, which—again—has the same relevant definition of disability and the same arbiter of claims.

Further, Defendant reaffirmed its denial on appeal after considering additional information from Plaintiff that stretched well past the Elimination Periods for both STD and LTD benefits. (*See* United 126–27.) Defendant determined Plaintiff's medical information supported "various diagnoses," but concluded those diagnoses do not support restrictions and limitations that would preclude her from performing her sedentary occupation. (United 129.) Defendant did so while knowing it "cover[s] [Plaintiff] for group long-term disability." (*Id.* 666.) Therefore, as Plaintiff argues, a factfinder could conclude that requiring Plaintiff to file a separate LTD claim "would have merely been an exercise of [Defendant] reevaluating the same medical evidence that it had just finished evaluating to deny Plaintiff's STD claim." (Opp'n 18:20–22.)

Nor do the policies underlying the exhaustion doctrine demand a different result. Plaintiff's case is not frivolous. And viewing the record in her favor, it is not clear why requiring the same insurer to reevaluate the same medical evidence for the same definition of disability to reach the same result would minimize the costs of claim settlement or promote proper reliance on administrative expertise before judicial review. *See Diaz*, 50 F.3d at 1483. The Court already has the insurer's reasoned explanation for why it believes Plaintiff does not qualify for benefits under a definition of disability that is materially the same as under the LTD Plan.

In sum, given the specific circumstances of this case, a reasonable factfinder could find Plaintiff's LTD claim was "doomed to fail." *See Diaz*, 50 F.3d at 1485. Consequently, the Court denies Defendant's request for summary judgment on exhaustion grounds.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for partial summary judgment. (ECF No. 22.) The Court grants Defendant's request to summarily adjudicate Plaintiff's request for STD benefits as moot.

The Court denies, however, Defendant's request to summarily adjudicate Plaintiff's request for LTD benefits on standing and exhaustion grounds. The parties shall proceed to their mandatory settlement conference before the Magistrate Judge on June 8, 2021. (ECF No. 33.)  If the case does not settle, the parties shall promptly contact the Court to schedule a bench trial to resolve Defendant's exhaustion defense and the remainder of Plaintiff's action.  Finally, the Court **DENIES AS MOOT** Defendant's *ex parte* application to submit supplemental authority consisting of two out-of-circuit district court decisions. (ECF No. 38.)  Both decisions rely on their respective circuits' futility rules and do not persuade the Court to reach a different result.

      **IT IS SO ORDERED.**

**DATED: April 9, 2021**

Hon. Cynthia Bashant
United States District Judge